FILED'11 JAN 26 11:15USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERGREEN HELICOPTERS, INC.,

    Plaintiff,

v.

ERICKSON AIR-CRANE INCORPORATED,

    Defendant.

Civ. No. 09-3059-PA

**ORDER**

**PANNER, District Judge:**

Evergreen Helicopters brings one count of monopolization and one count of attempted monopolization under section 2 of the Sherman Act, and one count of breach of contract as a third-party beneficiary against Erickson Air-Crane. The parties are very familiar with the facts and I do not restate them here. Erickson's motion for summary judgment is DENIED. Evergreen's motion for partial summary judgment is GRANTED.

1 - ORDER

**STANDARDS**

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**DISCUSSION**

**I. HELICOPTER TRANSPORT SYSTEMS V. ERICKSON AIR-CRANE**

The claims and many of the facts at issue here are similar to those found in Helicopter Transport Services, Inc. v. Erickson Air-Crane Incorporated (D. Or. Civ. No. 06-3077-PA). Because many of the issued from HTS are applicable here, I briefly recount some of the facts and conclusions.

Plaintiff Helicopter Transport Services, Inc. ("HTS") competed with Erickson for contracts requiring heavy lift helicopters. HTS operated CH-54s but did not own or operate any S-

64s. In 2006, HTS sued Erickson for antitrust violations and for breaching the 1992 contract between Sikorsky and Erickson. HTS alleged the contract obligated Erickson to supply parts for HTS's CH-54s. Erickson argued the contract merely obligated Erickson to provide CH-54 parts to military-owned CH-54s.

As relevant here, HTS moved for partial summary judgment on the issue of whether it had standing to sue as a third party beneficiary to the 1992 Sikorsky contract.

In my January 14, 2008 order, I concluded the 1992 contract obligated Erickson to provide parts to CH-54 owners, military or otherwise. I noted the 1992 Sikorsky agreement related to "Skycranes." The contract expressly defined "Skycranes" as S-64s and CH-54s. Article II, Section 3(b) of the contract stated Sikorsky would notify all operators of Skycranes:

> (1) that seller has transferred to buyer all right, title and interest in the [Skycrane] program, including goods, tooling and existing technical data (as set out herein); (2) that buyer has obligated itself to support the Skycrane aircraft as required by [FAA regulations]; (3) that buyer shall thereafter be, pursuant to this agreement, the direct source for re-supply of parts, components, and accessories for the Skycrane aircraft and; (4) that buyer shall commit itself to providing support and parts for the other owners and commercial operators of the aircraft certified under [three S-64 type certificates]; (provided, however, that such obligations of buyer are subject to buyer's transfer or abandonment thereof as permitted by law).

Article I, ¶ 3 stated the agreement applied to CH-54s, "whether in the possession of the U.S. Government or subsequent purchasers of these aircraft as surplus military aircraft." I noted that "Contemporaneous correspondence indicated that Sikorsky and Erickson both contemplated the number of military surplus CH-

3 - ORDER

54s would increase, and sought, through the 1992 contract, to provide for the future support of ex-military CH-54s." (Jan. 14, 2008 Order, 8.) I also noted that while the FAA regulations did not obligate Erickson to provide support for CH-54s, "neither do those regulations prohibit Erickson from voluntarily assuming such a duty by contract, as Erickson did in the 1992 contract." (Id.)

While the above analysis related to Erickson's obligations to support non-military owned CH-54s, I concluded material issues of fact remained on two issues: whether a third party such as HTS had standing to enforce the 1992 contract as a third party beneficiary; and whether HTS's breach of contract claim was barred by the statute of limitations. Therefore, I denied Evergreen's motion for partial summary judgment. I also denied Erickson's motion for summary judgment, which is similar to Erickson's motion for summary judgment here.

Three weeks later, my February 2, 2008 order - following Erickson's motion to reconsider a ruling on a pretrial motion in limine - granted HTS's motion for partial summary judgment on the issue of whether HTS had standing, as a third party beneficiary, to enforce the provision of the 1992 contract that Erickson shall support CH-54s owned by non-military owners.

In making that conclusion, I focused on the intent of Sikorsky and Erickson upon entering the 1992 contract. I noted that under Connecticut law, "the ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the intent of the parties to the

4 - ORDER

contract was that the promisor should assume a direct obligation to the third party beneficiary." (Feb. 4, 2008 Order, 4.)(citing Dow & Condon, Inc. v. Brookfield Development Corp., 266 Conn. 572, 580, 833 A.2d 908, 914 (2003)." I noted the deposition testimony of Erickson's president Jack Erickson and concluded Erickson undertook an affirmative obligation to supply parts to CH-54 owners, and that this obligation extended to non-military CH-54 owners.

Article I, ¶ 3 of the 1992 agreement stated the agreement extended to "CH-54 aircraft, whether in the possession of the U.S. Government or subsequent purchasers of these aircraft as surplus military aircraft." Additionally, the contemporaneous documents exchanged between Sikorsky and Erickson supported the conclusion that Erickson's obligation extended to CH-54s after they passed from the military to military-surplus purchasers.

Finally, I rejected Erickson's argument that Article XI, ¶ 4 of the agreement prohibited my conclusion that the parties intended to create an obligation enforceable by third parties. Article XI, ¶ 4 states, "The provisions of this agreement shall be for the benefit of Buyer and Seller and their affiliates and shall not extend to any third parties." I found ¶ 4 applied to many portions of the contract in a general manner. The boilerplate provision, however, did not apply to the provisions specifically creating third party beneficiary rights upon CH-54 owners.

In 2008, one week prior to trial, HTS and Erickson reached a settlement. Following the settlement, Erickson began providing

5 - ORDER

parts to military surplus CH-54 owners.

## II. EVERGREEN'S MOTION FOR SUMMARY JUDGMENT

Evergreen moves for summary judgment on one issue only: that Erickson breached its contractual obligation to provide parts for Evergreen's CH-54s. Erickson first argues Evergreen's claim is untimely.

Under Connecticut law, the statute of limitations for breach of (written) contract claims is six years. Conn. Gen. Stat. § 52-576(a). In Connecticut, the statute of limitations does not begin to accrue until all elements of a cause of action are present, including damages. Rosenfield v. Daved Merder & Asscs., 110 Conn.App. 679, 686, 956 A.2d 851 (2008)(internal citation and quotations omitted).

On June 29, 2009, Evergreen filed the complaint. Evergreen did not purchase its first CH-54 until 2004, within the six year statute of limitations. As I determine here and in Helicopter, the 1992 agreement obligates Erickson to provide parts to non-military CH-54 owners. Erickson had no duty under the agreement to provide parts to dealers in the secondary parts market. Erickson's obligation, as relevant here, only extended to CH-54s "in the possession of the U.S. Government or subsequent purchasers of these aircraft as surplus military aircraft." Article I, ¶ 3. Because Evergreen did not own a CH-54 until 2004, and because the 1992 agreement only obligated Erickson to provide parts to owners of CH-54s, no breach could occur until Evergreen purchased its CH-54 in 2004. Additionally, Erickson could not suffer damages until

6 - ORDER

it owned a CH-54. It is undisputed that Erickson refused to provide parts for CH-54s until after the 2008 Helicopter settlement. Erickson's breach of contract time is timely. Rosenfield, 110 Conn.App. at 686.

Erickson also argues that the 1992 agreement only obligated Erickson to provide CH-54 parts to the military or owners of military surplus CH-54s holding a TC. Evergreen did not receive a TC from the FAA for its CH-54 until 2008, three months after Erickson began selling CH-54 parts. In support of this argument, Erickson states Sikorsky and Erickson never intended to require Erickson to provide parts to owners of uncertified CH-54s. This argument is meritless.

As noted above, Article II, ¶ 3(b)(3) of the 1992 contract indisputably obligated Erickson to support the CH-54. This obligation extended to military surplus purchasers of the CH-54. Article I, ¶ 3. Article II, ¶ 3(b)(3) refers only to Erickson being "the direct source for re-supply of parts, components, and accessories for the Skycrane aircraft[.]" The agreement states S-64s and CH-54s are "referred to collectively as 'the Skycrane[.]'" Article II, ¶ 3(b)(3) is silent as to TCs. Erickson's obligation extended to owners of military surplus CH-54s. Whether the owner obtained a restricted TC from the FAA is immaterial to Erickson's obligation.

Evergreen's argument that changes in Ninth Circuit and Connecticut law regarding third party beneficiaries requires a finding that Evergreen lacks standing is meritless. Erickson's

7 - ORDER

argument again centers on the provision in Article XI, ¶ 4 that "The provisions of this agreement shall . . . not extend to any third parties. As I concluded in HTS, the general Article XI, ¶ 4 provision applies to the majority of the agreement. The provision, however, does not apply to the provisions of the agreement where the parties both expressly intended for Erickson to assume a direct obligation to CH-54 owners.

Evergreen's motion for partial summary judgment on its CH-54 breach of contract claim is GRANTED. A jury will determine the amount of damages, if any.

## II. ERICKSON'S MOTION FOR SUMMARY JUDGMENT

### A. Erickson's Motion for Summary Judgment on Evergreen's Breach of Contract Claim

#### A(1). EVERGREEN'S CH-54

For the reasons stated above, Erickson's motion for summary judgment on Evergreen's breach of contract claim related to the CH-54 is DENIED.

#### A(2). EVERGREEN'S S-64

After oral argument, Evergreen stipulated it would not pursue its breach of contract claim as to its S-64. Therefore, Erickson's motion for summary judgment is moot. Evergreen continues to pursue its antitrust claim as to the S-64.

### B. Evergreen's Motion for Summary Judgment on Evergreen's Antitrust Claim

Erickson first argues Evergreen's antitrust claims are untimely. In anitrust cases, each "overt act" inflicting damages generally is its own cause of action with its own four year

8 - ORDER

statute of limitations. <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 338 (1971). Any new injury within the statute of limitations period resulting from a "continuing violation" is a separate cause of action. <u>Id.</u> Even if Erickson's initial refusal was "final," any damages suffered within the four-year limitations period are not time-barred unless all of the damages resulted solely from Erickson's initial refusal. <u>LaSalvia v. United Dairymen</u>, 804 f.2d, 1113, 1117-18 (9th Cir. 1986).

The question of whether a refusal is final or continuing is usually a question reserved for the jury. <u>In re Multidistrict Vehicle Air Pollution. AMF, Inc. v. General Motors Corp.</u>, 591 F.2d 68, 71 (9th Cir. 1979). The question is whether a defendant communicated its intentions "clearly and irrevocably" to a plaintiff. <u>Id.</u> at 72. If so, the refusal could be "final" as "forlorn inquiries by one all of whose reasonable hopes had been previously dashed" do not restart the statute of limitations clock. <u>Id.</u>

Evergreen's argument regarding the S-64 is twofold: that Erickson occasionally intentionally dragged its feed when providing service, thereby needlessly grounding the helicopter; and that Erickson improperly refused to provide overhaul manuals necessary to provide heavy maintenance. As to the alleged failure to provide timely service, there was no explicit refusal that could be considered final. As to the overhaul manuals, Erickson did provide some updated manuals to Evergreen. Although Erickson's policy since 1992 of not providing the heavy overhaul manuals

9 - ORDER

appeared consistent, Erickson did provide some manuals and updates to Evergreen. Even if Erickson's initial refusal here was "final," a genuine issue of material fact exists as to whether any damages suffered within the limitations period arose solely from that initial refusal. See Zenith, 401 U.S. at 338; LaSalvia, 804 F.2d at 1117-18. The jury will resolve this question.

Erickson argues that it put Evergreen on notice that Erickson would not supply or service CH-54s in 1992. Erickson argues any injury to Evergreen became final in 1992. AMF, 591 F.2d at 71. Erickson argues any refusals to provide parts or service on CH-54s within the statute of limitations period were merely reinforcements of its initial final refusal to provide parts or service for CH-54s.

As noted above, the question of whether a refusal is final or continuing is usually a question reserved for the jury. Id. In the wake of the 2008 Helicopter settlement, Erickson reversed its earlier policy and began to provide parts to CH-54 owners. This was a clear break with its prior policy. Viewing the facts in the light most favorable to Evergreen, Erickson's 180 degree turnaround presents a question of fact as to whether Erickson's 1992 refusal to deal with CH-54 owners was a final and irrevocable decision.

Erickson argues its 2008 policy reversal should not be held against them. It cites Kaw Valley Electric Coop. Co. v. Kansas Electric Power Coop., Inc., 872 F.2d 931, 935 (10th Cir. 1989) in support. Kaw Valley does analyze finality, and analyzes the

leading Ninth Circuit cases. Id. at 933-34. Kaw Valley however, does not actually support Erickson's position. The Kaw Valley defendant - a utility corporation - had a formal policy, adopted by its board of trustees, explicitly outlining its policy that it had no duty to supply that plaintiff with power. Id. at 935. Seeking to avoid litigation, that defendant made a "small" offer of power to plaintiff. Id. at 932. Plaintiff refused the offer, made a written demand for more power which defendant refused, and then sued plaintiff. Id.

The district court dismissed the suit as barred by the statute of limitations. The Tenth Circuit affirmed the district court conclusion that the initial refusal was final. Although the "small" offer made by defendant to avoid litigation occurred within the limitations period, the Tenth Circuit refused to treat the offer as an "overt act." In addition to noting the Board of Trustees explicitly approved the policy, the court noted the "size of the offer in relation to [plaintiff's] demands, coupled with the litigation context, is perfectly consistent with the finality of the policy decision that [defendant] had no obligation to provide [plaintiff] with power." Id. at 935.

The facts at issue here are markedly different. First, rather than seeking to avoid litigation, Erickson's change in policy was a direct result of my conclusion that the 1992 contract obligated Erickson to provide parts to CH-54 owners and that those owners had standing to sue to enforce the contract. This conclusion was directly opposite to Erickson's prior policy. Unlike the power

11 - ORDER

company in Kaw Valley, Erickson undertook a complete 180 in policy. This change in policy was not "small." The change was in fact the direct opposite of Erickson's prior policy. As I must view this evidence in the light most favorable to Evergreen, I conclude Erickson's 2008 change in policy prevents a conclusion at summary judgment that its initial refusal was "final" and irrevokable. I also conclude that a reasonable juror could conclude Evergreen suffered damages within the limitations period unrelated to any initial refusal.

Erickson also argues that Evergreen's antitrust claims fail on the merits. Erickson, citing an unpublished Ninth Circuit case, argues that the Ninth Circuit has "expressly adopted" the Eleventh Circuit's rule that "Trinko now effectively makes the unilateral termination of a voluntary course of dealing as a requirement for a valid refusal-to-deal claim under Aspen." (Mem. In Supp. Of Erickson's Mot. for Summary Judgment, 23)(citing LiveUniverse, Inc. v. Myspace, Inc., No. 07-56604, 2008 U.S. App. LEXIS 27141 (9th Cir. Dec. 22, 2008.) First, this unpublished memorandum disposition is not precedent, See Ninth Circuit Rule 36-3.

Second, I agree with Evergreen that existing precedent allows the court to consider the termination of a prior course of dealing as a factor related to a defendant's intent (as opposed to a required element of a refusal to deal claim). Verizon Communs. Inc. v. Law Office of Curtis V. Trinko, LLP, 540 U.S. 398, 409 (2004)(where complaint did not allege Verizon ever engaged in voluntary course of dealing with rivals, "defendant's prior

12 - ORDER

conduct sheds no light upon the motivation of its refusal to deal[.]"; MetroNet Services v. Qwest Corp., 383 F.3d 1124 (9th Cir. 2004).

Third, even if Erickson is correct that the Ninth Circuit now requires "the unilateral termination of a voluntary course of dealing as a requirement for a valid refusal-to-deal claim," Erickson is not entitled to summary judgment. Viewed in the light most favorable to Evergreen, a reasonable juror could concluded Erickson unilaterally terminated a voluntary course of dealing with Evergreen. Prior to 1992, Sikorsky provided overhaul manuals to Evergreen. Sikorsky also sold parts to CH-54 operators. There is no evidence Sikorsky attempted to limit the sale of parts on the secondary parts market. Presumably, Sikorsky engaged in these practices because the practices were profitable. After the 1992 agreement however, Erickson unilaterally reversed course. Although Erickson cites liability concerns as its reason for not following Sikorsky's course, this determination is not suitable for summary judgment. In short, a reasonable juror could conclude Erickson sacrificed short-term profits for long-term (anticompetitive) gains. MetroNet, 383 F.3d at 1132-33.

Other disputed questions of material fact preclude granting Erickson's motion for summary judgment on the merits of Evergreen's antitrust claims. Many of these questions were also present in Helicopter. To list a few: whether there is a relevant market for heavy lift helicopters; whether Erickson's decision to not provide manuals was motivated by dreams of monopoly or good

13- ORDER

business sense; whether Erickson had legitimate business reasons or predatory purposes in refusing to provide CH-54 parts to dealers in the secondary parts market; and whether Erickson improperly prohibited third-party manufacturers/sellers from dealing with Evergreen.

Because numerous disputed questions of material fact exist, Erickson's motion for summary judgment is DENIED.

## CONCLUSION

Evergreen's motion for partial summary judgment on its CH-54 breach of contract claim is GRANTED. Erickson's motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATED this 26 day of January, 2011.

*/s/ Owen M. Panner*

OWEN M. PANNER
U.S. DISTRICT JUDGE